**Peter SITTNER, Plaintiff and Appellant,**

**v.**

**Clara MISTELSKI, formerly Clara Geiger, Rachel Miller, nee Geiger, Bernice Lansear, nee Geiger, and The First National Bank & Trust Company, of Fargo, North Dakota, Administrator of the Estate of Henry Mistelski, Deceased, Defendants and Respondents.**

**No. 8252.**

Supreme Court of North Dakota.

Feb. 11, 1966.

Kelsch & Wise, Mandan (Conmy & Conmy, Bismarck, of counsel), for appellant.

R. J. Bloedau, Mott, and T. L. Secrest, Hettinger, for respondents.

ERICKSTAD, Judge.

This is an appeal by the plaintiff, Peter Sittner, from a judgment entered April 23, 1965, in the District Court of Sioux County, in favor of the defendant Clara Mistelski. Trial de novo is demanded.

By summons and complaint dated June 29, 1963, served upon the defendants in July and August, 1963, the plaintiff brought an action to quiet title to the Southwest Quarter of Section 27, Township 129, North of Range 90, West of the Fifth Principal Meridian, situated in Sioux County, North Dakota. The material allegations of the complaint will be obvious from discussion of

this case as it evolves. The defendant Clara Mistelski answered by generally denying the allegations of the complaint and counterclaimed, asking that title to said property be quieted in her except for such interests therein as were determined to be the property of the estate of Henry Mistelski, deceased. She also alleged that Mr. Sittner was wrongfully in possession of the property and had wrongfully taken the 1962 crop therefrom. She asked that he be required to account to her for her share of the 1962 and 1963 crops from the said land and that he be required to account to the First National Bank & Trust Company of Fargo, as the administrator of the estate of Henry Mistelski, deceased, for any right, share, or interest to which it is entitled.

In his reply Mr. Sittner alleged that Mrs. Mistelski was estopped to claim any title or interest in the property because of her conduct and because she had by a written memorandum waived, conveyed, and denied any claim to the property.

The defendant First National Bank & Trust Company of Fargo, North Dakota, (hereafter called the Bank) in its answer admitted that it was appointed administrator of the estate of Henry Mistelski, deceased, and that letters of administration were issued to it as administrator; that the defendant Clara Mistelski is the surviving widow of Henry Mistelski, deceased, and that the defendants Rachel Miller and Bernice Lansear are children of Clara Mistelski by a former marriage; that an inventory was filed in the estate of Henry Mistelski, deceased, by the administrator, and that the administrator did petition the County Court of Sioux County for an order authorizing the said administrator to sell the land. It denied that it had any knowledge or information sufficient to form any belief as to the truth of the rest of the material allegations set forth in the complaint and therefore prayed that the parties in the action be required to set forth the nature of their claims so that said claims could be determined by a decree of the court.

A reply was later made by the Bank upon information and belief, denying each and every allegation of the defendant's counterclaim.

Following the hearing on this matter which commenced January 28, 1964, a judgment dated April 27, 1964, was rendered, determining that Clara Mistelski was the owner in fee simple of an undivided $^{17}\!/_{21}$ interest and that the heirs at law of Henry Mistelski, deceased, are the owners of the remaining undivided $^{4}\!/_{21}$ interest in the land, the latter interest being subject to the possession of the Bank, as administrator of the estate of Henry Mistelski, deceased, for purposes of administration. The judgment further provided that Mrs. Mistelski was entitled to a money judgment against Mr. Sittner of $1,926.53 for the use and occupation of the premises during 1962 and 1963. (The court based this figure on the testimony of the defendant that in the usual share crop tenancy in which the tenant assumes all costs, the crop is divided one-third share to the landlord and two-thirds share to the tenant. It charged Mrs. Mistelski 10 cents per bushel for hauling the grain to the elevator and also deducted the $200 paid by Mr. Sittner for the dismissal of the appeal from county court.) It decreed that Mr. Sittner had no interest in the land. From this judgment Mr. Sittner appeals.

Mr. Oswald Geiger bought the land in question in 1910. Sometime thereafter he married the defendant Clara, and to this union two children were born, Mr. Geiger having had five children by a previous marriage. In 1921 Mr. Geiger died intestate. In the probate of his estate Clara was decreed an undivided $\frac{1}{3}$ interest in this land, and each of the seven children were decreed an undivided $^{2}\!/_{21}$ interest. Sometime between Mr. Geiger's death and the closing of the probate of his estate, Clara married Henry Mistelski. In December 1922 by quitclaim deed the five adult children conveyed their interests in the land to Clara.

In October 1928 Clara and her then husband Henry contracted to sell the said prop-

erty to one Conrad Hart by contract for deed. Conrad Hart and his wife quit-claimed their interest in the premises back to Henry and Clara Mistelski in March 1930.

Prior thereto, in April 1922, Clara had been appointed guardian of the persons and estates of the two minor Geiger children, and in July 1930 the County Court of Sioux County executed its order approving the sale of the said minors' 4/21 interest in the property to Henry Mistelski. In August 1930 the 4/21 interest was conveyed to him by a guardian's deed.

Henry Mistelski had two children by a previous marriage, and two were born to Henry and Clara. Henry died in 1959. The First National Bank & Trust Company of Fargo, North Dakota, was named as administrator of his estate for the purpose of probating the estate in North Dakota, the main probate having been settled in South Dakota, which was the state of his residence. The only property listed in the ancillary probate proceedings instituted in North Dakota was two quarters of land, the one in question being appraised at $3,200. Clara filed a claim against the estate in the sum of $248.63 for real estate taxes paid by her on the premises for the years 1959–1961. This claim was approved by the administrator but has not been paid.

Calvin Mistelski, a son of Clara and Henry, filed a claim for $600, later reduced to $480, for summer fallowing the land in question. This claim has also been approved by the administrator.

The administrator advertised the two quarters of land for private sale on written bids. Clara Mistelski filed a written bid of $3,200 and Peter Sittner filed a written bid of $8,250 for the quarter in question. After the opening of the written bids Clara demanded the right to raise her bid through oral bidding, but the county court refused to permit oral bidding and made the sale of the property to Mr. Sittner for his bid of $8,250.

Mrs. Mistelski had been informed by counsel for the administrator that she could put in a written bid and upon the opening of the written bids raise her bid by oral bidding. On encountering the adverse ruling of the county court, she employed counsel, who petitioned the court for "a re-hearing in connection with the sale of real estate." This petition was denied by the county court. Her counsel then filed notice of appeal from this decision to the district court. Meanwhile, Mr. Sittner took possession of the land in May 1962 and has apparently farmed the land ever since that date. Before taking possession of the land Mr. Sittner paid $100 with the submission of his bid, and, upon the court's issuance of an order confirming the sale of the land, he paid the administrator an additional $1,000.

On December 31, 1962, Mrs. Mistelski and Mr. Sittner entered into an agreement which reads as follows:

I

That appellants [Clara Mistelski, Calvin Mistelski, and Henrietta B. Wilson] will and hereby do consent to the dismissal of the appeal taken from the order of the County Court of Sioux County, North Dakota, dated and entered on the 28th day of June, 1962, the Honorable Robert F. Coyle presiding, said dismissal to be without costs and with prejudice.

II

That the appellants agree and acknowledge that they have no further right, title, or interest in or to the real estate sold in the estate of Henry Mistelski to Peter Sittner on April 9th, 1962, being Southwest Quarter (SW¼) of Section Twenty-seven (27), Township One Hundred Twenty-nine (129) North, Range Ninety (90) West of the Fifth Principal Meridian, Sioux County, North Dakota.

## III

That appellants expressly retain their rights in and to the proceeds derived from the sale thereof as their interests appear in the estate of Henry Mistelski, deceased.

## IV

That Peter Sittner will pay to the appellants the sum of Two Hundred Dollars ($200.00), which will be a full and complete consideration for the appellants' execution of this stipulation.

## V

That either party may present this stipulation to the Court and the Court may order a dismissal of the appeal.

The $200 recited in the agreement was paid to Mrs. Mistelski and has been retained by her.

Mr. Sittner's attorneys acquired the abstract of title to the land in January 1963 and, on examining it, discovered that the record title indicated that Clara Mistelski owned a ¹⁷⁄₂₁ interest in the land and that only an undivided ⁴⁄₂₁ interest in the land was properly a part of the Henry Mistelski estate. Counsel for Mr. Sittner so informed counsel for the administrator, and counsel for the administrator then informed Mrs. Mistelski's son, who then informed Mrs. Mistelski of this fact. Mr. Sittner then, on April 22, 1963, through his attorneys, offered to pay the unpaid balance of the bid to Clara Mistelski and the administrator of the estate, as the interests appeared in the office of the register of deeds. Mrs. Mistelski rejected this offer, and Mr. Sittner commenced this action to quiet title to the premises.

We shall consider the issues in the order in which they have been raised by Mr. Sittner.

Issue No. 1: Is Clara Mistelski estopped to claim title to the land?

Mr. Sittner urges in support of his contention that Mrs. Mistelski is estopped from claiming title to the land that prior to bidding on the land, Mr. Sittner checked with the ASC office for Sioux County to determine the acreage allotment and was informed at that office that their records indicated that Henry Mistelski was the owner of the land; that in paying real estate taxes on his lands, which adjoined this land, he noticed in the tax books of Sioux County that the land in question was listed in the name of Henry Mistelski; that prior to Henry Mistelski's death he had a conversation with Henry and Clara in their home and that he asked Henry in Clara's presence if he could buy the land in question and that Henry said he was thinking of selling it, but that no agreement was reached; that he talked with Henry and Clara while Henry was ill in the hospital and that Clara called him aside and asked him if he would try to buy the land from Henry because she had had trouble at the time of her first husband's death in probating his estate and that she would rather have the cash; that he had a similar conversation later with .Clara when he visited with her at the hospital; that following Henry's death he talked with Clara at a cafe in Morristown, South Dakota, and she asked him if he would help appraise the quarter of land and he told her that he could not because he was interested in buying the land; that later at her home she told him that she was going to bid on the land even if it took everything she had, that she didn't get along with Henry's son by a previous marriage, and thus hoped to bid low and resell it at a profit so that Henry's two children by the previous marriage would not get much, and that she told him that if anyone else bid against her, she would make it so rough they would wish they hadn't; that following the sale, Clara called him and asked him if her son Calvin could remove the plow from the land and that she then told him that she had some expense and wanted a little cash; that she

later went to his home and asked for $300 cash and said that she would sign that she had no right in the land if he would pay her that sum; that he then offered her $200 and that she refused it but later signed an agreement to settle her appeal for the sum of $200; that in the probate proceedings in South Dakota she indicated that Mr. Mistelski owned two quarters of land in North Dakota.

On the other hand, Mrs. Mistelski denies that she ever asked Mr. Sittner to buy the land from her husband or that she had any of the other conversations as related by Mr. Sittner. She points out that, rather than inducing him to buy the property, she tried from the beginning to prevent him from buying it.

The trial court's views of the facts, as expressed in its memorandum opinion, are correct and clearly state the situation:

The defendant Clara Mistelski received only a grade school education, was a farm wife and her first and second husbands transacted all legal and business transactions for the family. She had no business training and had only a vague conception and limited understanding as to the laws of descent and distribution and the laws pertaining to conveyances of real property and real estate titles. From her testimony it appears that she did not know whether or not she ever received an interest in the land upon the death of her first husband, though the records reflect that her first husband died intestate and that she received an undivided one-third interest in the land. She remembered that some of her children had transferred their interest to her and that a guardianship proceedings was had whereby she as guardian conveyed some interest in the land to her second husband. She did not know what had happened to the land during the depression years. During the last forty years of her second marriage her late husband, Hen-

ry Mistelski, handled all business affairs and handled the land as though it were his own. Even the A.S.C. records pertaining to the land were in the name of her husband. She never was apprised of her interest in the land. All of the parties were mistaken as to the title of the land in question. The plaintiff was mistaken. The defendant Clara Mistelski did not know of her own title, if any. The Administrator was mistaken as to the title. The attorney for the Administrator was mistaken. Mr. Chapman, Mrs. Mistelski's attorney, was mistaken as to the title. Even the County Court was mistaken as to the title of the land in question.

From the evidence in this case it overwhelmingly appears that Clara Mistelski did not know and was not apprised of the true state of the title to the land in question. She did not have any knowledge of the extent of her interest until she was notified by Mr. Secrest after the attorneys for Mr. Sittner had examined the abstract of title.

■ What we said in Hruby v. Romanick, 128 N.W.2d 106 (N.D.1964), applies in the instant case:

* * * On appeal from a judgment in an action tried to the court without a jury, the findings of the trial court are always given appreciable weight, especially when based upon testimony of witnesses who appeared before the court in person. Knell v. Christman, 79 N.D. 726, 59 N.W.2d 293; Schott v. Enander, 73 N.D. 352, 15 N.W.2d 303; Kolb v. Kolb, 75 N.D. 181, 26 N.W.2d 484; Higgins v. Duprat (N. D.), 120 N.W.2d 16.

Hruby v. Romanick, supra, 128 N.W.2d at 110.

■ Our view is that none of the things asserted by Mr. Sittner estopped Mrs. Mis-

telski from claiming her right, title, and interest in the property herein in issue.

Our statute on estoppel reads as follows:

31–11–06. Estoppel by declaration, act, or omission.—When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

North Dakota Century Code.

■ In Gjerstadengen v. Van Duzen, 7 N.D. 612, 76 N.W. 233, our court said:

* * * The law declares to the purchaser that he must see to it, at his peril, that the proceedings are legal, and that the land does in fact form part of the decedent's estate.

Gjerstadengen v. Van Duzen, supra, 76 N.W. at 235.

■ In Gjerstadengen v. Hartzell, 9 N.D. 268, 83 N.W. 230, our court quoted with approval from the case of Boggs v. Merced Mining Co., 14 Cal. 279. In that case the California court said:

It is undoubtedly true that a party will in many instances be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property it must appear: *first*, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.

Boggs v. Merced Mining Co., 14 Cal. 279, at 367–8.

Mr. Sittner contends that the third requirement has been modified by a later California decision as being too strict and that, instead of being destitute of all means of acquiring knowledge, the party need only be destitute of all convenient and ready means to such end.

Some California decisions seem to have so modified the rule. It appears to us, however, that many of the recent California decisions apply the old rule.

Whatever may be the rule in California now, we said in the case of Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810:

To constitute an equitable estoppel— "there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts, and the party to whom it was made must have been without knowledge or the means of knowledge of the real facts." 16 Cyc. 726.

Loff v. Gibbert, supra, 166 N.W. at 812.

In the syllabus of a 1936 opinion which quoted with approval the same paragraph from *Loff*, we said:

The doctrine of equitable estoppel is essentially one of good conscience, and does not permit a litigant to assert that he was misled by another's error when the real facts were open for his convenient ascertainment.

Thompson v. North Dakota Workmen's Compensation Bureau, 66 N.D. 756, 268 N.W. 710, at 711.

In a more recent case our court said:

This court has held that to constitute an equitable estoppel there must exist a false representation or concealment of facts made with knowledge, actual or constructive, and the party to whom it was made must have been without knowledge or means of knowledge of the real facts. [Citing *Loff.*] Where the facts are known to both parties, as they were here, or where they have the means of ascertaining the truth, there is no estoppel. [Citing *Loff.*] See also Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288; First Church of Christ, Scientist v. Revell, 68 S.D. 377, 2 N.W.2d 674.

Kunick v. Trout, (N.D.1957), 85 N.W. 2d 438 at 448.

Mr. Sittner's contention is that all four conditions have been met in the instant case. With this contention we cannot agree.

Mrs. Mistelski filed a written bid, then tried to orally bid on the property, and, on being denied permission to do so, sought a review of this decision. On being denied the review, she appealed to the district court. These actions indicate that she thought the decedent owned the property and that she did not know the true state of the title. We find no declaration made by her with express intent to deceive or made in so careless or culpably negligent a manner as to amount to constructive fraud. We cannot expect this farm wife, inexperienced in business and unfamiliar with probate and real estate law, to know the true state of the title to land, when none of the lawyers or the county judge concerned with the probate sale knew the title's true state.

Mr. Sittner may have been without knowledge of the true state of the title, but he was not without means of acquiring that knowledge. In Narveson v. Schmid,

77 N.D. 814, 46 N.W.2d 288 (1951), our court quoted the following with approval:

* * * "A public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information." 31 C.J.S., Estoppel, § 71, p. 272 * * *.

Narveson v. Schmid, supra, 46 N.W.2d at 294.

■ In the instant case Mr. Sittner failed to check the proper public records (those of the register of deeds office) where he could have ascertained the true state of the record title. He was obviously not without means of acquiring knowledge as to the true state of the title. It can also be said that he was not without convenient means of acquiring knowledge.

It is also difficult for us to see how Mr. Sittner can contend that he relied directly upon any admission of Mrs. Mistelski, when, in filing his written bid, he made it subject to receipt of an abstract "evidencing merchantable title to the property."

We therefore conclude that Mrs. Mistelski was not estopped to assert her claim of title.

Issue No. 2: The trial court erred in concluding that Mr. Sittner had an obligation to check the true state of title.

This issue has been considered by us in the discussion of the first issue. We therefore conclude that the trial court did not err in this respect.

Issue No. 3: Did Clara Mistelski convey her title to the plaintiff in a written stipulation which constitutes a conveyance under law?

Our answer to this question is that she did not.

Our statute relating to the conveyance of land following a private sale in the probate of an estate reads as follows:

30–19–20. Land, how conveyed—Whole estate granted.—A conveyance of real property of an estate sold as provided in this chapter must be executed to the purchaser by the executor or administrator and must refer to:

1. The orders of the county court authorizing and confirming the sale of the property of the estate and directing conveyance thereof to be executed; and

2. The record of the order of confirmation in the office of the register of deeds, by the date, volume, and page of the record.

Such reference shall have the same effect as if the orders were inserted in the conveyance. A conveyance so made conveys all of the right, title, interest, and estate of the decedent in the premises at the time of his death. If prior to the sale, by operation of law or otherwise, the estate has acquired any right, title, or interest in the premises other than, or in addition to, that of the decedent at the time of his death, such right, title, or interest also passes by such conveyance.

North Dakota Century Code.

This statute clearly indicates that a conveyance so made conveys only the right, title, interest, and estate of the decedent in the premises. In the instant case the decedent owned only an undivided 4/21 interest in the property, and, thus, any agreement waiving a right to appeal from the decision of the county court in connection with the taking of bids for the sale of property during probate could only relate to the 4/21 interest of the deceased.

Although the agreement described the land, it specifically provided that "the appellants agree and acknowledge that they have no further right, title, or interest in or to the real estate sold in the estate of Henry Mistelski to Peter Sittner on April 9, 1962." As the 4/21 interest was the only interest the decedent had, it was the only interest over which the county court had jurisdiction. Thus, the stipulation to dismiss the appeal taken from the order of the county court could affect only that interest. We therefore conclude that Mrs. Mistelski did not convey her title in and to the 17/21 interest in the land by the written stipulation hereinbefore set forth.

A court of equity, having acquired jurisdiction over the subject matter, will retain it and do complete justice between the parties. United Accounts, Incorporated v. Larson, 121 N.W.2d 628 (N.D.1963); Coykendall v. Kellogg, 50 N.D. 857, 198 N.W. 472; Schmidt v. Johnstone, 31 N.D. 53, 153 N.W. 293. As Mr. Sittner made payments on the purchase price to the administrator of the estate, erroneously assuming that he was purchasing the entire quarter section of land, we hereby remand the case to the district court with instructions to the court to amend its judgment to provide for the refund of said payments to Mr. Sittner by the administrator of the estate. The judgment is in all other respects affirmed.

STRUTZ, TEIGEN and KNUDSON, JJ., concur.

BURKE, C. J., did not participate.